## J. E. Myers v. L. B. Menifee & Co.

Decided May 10, 1902.

**1.—Contract—Fraud of Seller—Misrepresentations.**

Plaintiff contracted to supply defendants with crossties, subject to the inspection of a railroad company, and afterwards wrote defendants for the railroad's specifications as to the ties they would accept, saying that he could not furnish the stipulated number unless willow oak ties would be accepted, and that this was à very fine quality of oak. To this defendants replied that they would accept willow oak ties, and inclosed the requested specifications, which called for "oak standard" ties. The evidence showed that willow oak was not suitable for ties, plaintiff himself testifying that he had never before used it or known it to be used for ties, and it further showed that defendants knew nothing about willow oak, and in agreeing to accept such ties relied on plaintiff's statement as to the quality of the oak. Held, that defendants were not precluded from requiring that the ties furnished should be "standard," or such as would be accepted by the railroad company.

**2.—Appeal—Objections to Evidence.**

Objections to the admissibility of evidence can not be made for the first time in the appellate court.

Appeal from Bowie. Tried below before Hon. J. M. Talbot.

*Sheppard, Jones & Sheppard,* for appellant.

*R. M. Hubbard* and *J. B. Manning,* for appellees.

BOOKHOUT, Associate Justice.—On June 27, 1899, appellant (plaintiff below) filed his original petition in the District Court of Bowie County in which he set up a contract with appellees to make and deliver, at or near Bassett, 15,000 pieces 6x8x8 hewn oak ties, subject to the inspection of the Colorado & Southern Railway Company's inspector, to be delivered not later than May 15, 1899; that under said contract appellant made and delivered 1939 of said ties on said railroad, when the inspector of said Colorado & Southern Railway Company looked at said ties and refused to take them, for the reason that said ties were not made from white oak, or post oak; that appellee then refused to take said ties and stopped appellant from making any more ties under said contract; that appellant's damages resulting from said breach is the value of said 1939 ties, $484.75 he made, and the profit he would have made on the balance of said tie contract if he had been allowed to complete it, $783.66; that appellant's total damages are $1268.41.

Appellee first filed a plea to the jurisdiction of the District Court of Bowie County, general demurrer, and general denial, and specially answering, plead that it never at any time agreed to take ties made of willow oak, and that it never at any time agreed to accept any ties from appellant except ties made of post oak or white oak timber; that if it did agree to accept crossties made of willow oak in place of white oak

or post oak, that it was because it was misled by the false representations of appellant; that appellant represented to appellee that willow oak ties were as good in every respect, were as durable and made as good railroad crossties as post oak or white oak; that appellant knew when he made said false and fraudulent statements and representations to appellee that they were false and untrue, but that appellees did not know that willow oak timber was not as good for ties as white oak or post oak, and relied on appellant's statement that willow oak was as good for crossties as white oak or post oak, and had they known that it was not they would not have agreed to accept the willow oak ties.

On October 24, 1901, this cause was tried by the court without a jury, and the court rendered judgment that the plaintiff take nothing by this suit and that the defendant go hence without day and recover of the plaintiff all cost, etc., and on the same day plaintiff filed his motion for a new trial, which was, on said October 24, 1901, in all things overruled, to which judgment and action of the court the plaintiff then and there excepted and in open court gave notice of appeal and has perfected his appeal to this court.

*Opinion.*—1. It is contended by appellant that the judgment of the trial court is not supported by the evidence but that the same is contrary to the evidence. The case was tried before the court without the intervention of a jury, and if there is evidence in the record to sustain the judgment then this contention is unsound. It is shown by the record that on the 6th day of February, 1899, appellant and appellee met in the office of appellee in the city of Fort Worth. They there entered into the following agreement:

"FORT WORTH, Texas, Feb. 6, 1899.
"L. B. Menefee & Co., Fort Worth, Texas:

"Gentlemen.—I hereby agree to place on the line of the Cotton Belt Railway Company, at or near Bassetts, and on a side track, 15,000 pieces 6x8x8 hewn oak ties, subject to inspection of Colorado & Southern Railway Company's inspector. Your company to pay me the cash as soon as inspected and accepted by said railway company at the rate of (26) twenty-six cents per tie f. o. b. cars. I further agree to have the 15,000 all ready for inspection and shipment not later than May 15, 1899. Yours truly,

"J. E. MYERS.
"O. K., L. B. Menefee & Co.
"O. R. M."

Thereafter appellant returned to his home in Bowie County. Appellant there arranged with one Mr. Simms to furnish him with money and supplies to enable him to carry out the above contract. At the suggestion of Mr. Simms appellant sent the following letter to appellees:

"Simms, Texas, February 8, 1899.

"Messrs. L. B. Menefee & Co., Fort Worth, Texas:

"Gentlemen.—In reference to the contract made with you on the 6th inst., will say that conditions are not satisfactory to parties I desire to get to assist me in filling same. They desire to know exactly what the specifications of the Colorado & Southern Railway Company's inspector are in reference to oak timber if he receives only white oak. They fear that they can not secure this amount of ties in the length of time given, but if he will accept willow oak (which is a very fine quality of oak) we will have no trouble in filling this contract. Please send us a copy of your contract with the C. & S. Railway Company in reference to timber and workmanship. Should also like to arrange a meeting with inspector of this company in Texarkana so that we might get his personal views on the matter. Should like to arrange this meeting at an early date as possible. Yours truly,

                                                    "J. E. Myers."

On February 10, appellee repied to the above letter as follows, to wit:

                        "Fort Worth, Texas, February 10, 1899.

"J. E. Myers, Bassett, Texas:

"Dear Sir.—Referring to your letter, will accept the willow oak ties and send you the inspector within the next two weeks. He can run over there and see you most any time. Hurry all you can and advise if you are going to get out 2000 pieces 6x8x12. Yours truly,

                                            "L. B. Menefee & Co.

"O. R. M."

Appellee inclosed in this letter specifications of the Colorado & Southern Railway Company, which read as follows, to wit: "15,000 oak standard crossties, the same to be six inches thick between parallel faces, each face to be not less than eight inches wide at any point and each tie to be eight feet long, the same to be hewn from straight, sound live oak timber, free from cracks and rotten knots, which will be received subject to the inspection of the Colorado & Southern Railway Company, when placed in piles in close proximity to railroad where same can be loaded on cars."

By the terms of the contract of February 6th, the appellee only became bound to pay for the ties after inspection by the Colorado & Southern Railway Company and its acceptance of the same. It is undisputed that the ties were not accepted, but were rejected by the Colorado & Southern Railway Company for the reason that they were made out of willow oak instead of white oak or post oak. It is insisted, however, by appellant that the appellees consented to the use of willow oak in their letter of February 10th. This letter was written in reply to appellant's letter of the 8th of February. In the letter of appellant of that date it is stated that willow oak is a very fine quality of oak.

Appellant testified that he meant by this expression that willow oak was a very fine quality of oak for ties. There is evidence sufficient to justify the conclusion that this is not true. There is testimony to the effect that this kind of oak is not suitable for railroad ties. They will only last two or three years, and when nails or spikes are diiven in them, on exposure to the sun there is a shrinkage which draws the wood away from the spike and it comes out. Appellant has never known this kind of oak to be used for crossties, although he has been in the tie business for many years. He testified that he had made a great many ties for appellee and has never put out any willow oak ties prior to this time. This is the first trouble he has ever had with appellees about ties. O. K. Menefee, who represented the appellees and who wrote the letter of February 10th, testified that he did not know anything about willow oak and did not know it from white oak or from post oak, but relied on the statement in appellant's letter of February 8th and believed said statement that willow oak was a very fine quality of oak for crossties and that it would be taken and received by the Colorado & Southern Railway Company; that in writing the letter of February 10th, he relied upon the statement in appellant's letter as to the quality of willow oak. Appellees, in their pleadings, deny that they ever agreed to accept willow oak ties and deny the contract as alleged by appellant, and further allege that if it should be held that they did consent to accept willow oak ties, then it was by reason of the false and fraudulent statement and representations concerning the quality of willow oak timber made to appellees by appellant. In deference to the judgment of the trial court we conclude that the evidence is sufficient to sustain the finding that the appellees were induced to consent to the use of willow oak by the false representation of appellant that willow oak is a very fine quality of oak; that appellees relied thereon and that they are not bound thereby. It was known to appellant that appellees were contracting for the ties to fill a contract with the Colorado & Southern Railway Company. In his letter of February 8th appellant requested that he should be furnished with a copy of appellee's contract with said railroad company "in reference to timber and workmanship." In their reply to this letter appellees inclosed a copy of the specifications of the Colorado & Southern Railway Company by which it is shown that the ties were to be "oak standard crossties," and further were to be received subject to inspection of the said railroad company. The word "standard" as used in these specifications has reference not only to the workmanship and dimensions of the ties, but to kind and quality. The evidence shows that willow oak ties are not received or used by railroads and especially by any of the railroads in Bowie County. The evidence is sufficient, in our judgment, to show that a crosstie made out of willow oak is not a standard crosstie. As before stated, it is undisputed that the ties were not accepted by the Colorado & Southern Railway Company for the reason that they did not comply with the specifications. We conclude that the evidence was sufficient to support the judgment.

2. It is contended that the testimony that other railroads, and especially those in Bowie County, would not accept crossties made of willow oak was improperly admitted and hence should not be considered by this court. It is insisted that the defense is based on the failure of plaintiff to comply with an express contract, and the evidence of the custom of other railroads about the kind of ties used by them was inadmissible. This evidence was admitted in the trial court at the time of the trial without objection. It is held that objections to evidence can not be made for the first time in the appellate court. Russell v. Wall, 2 Texas Civ. App., 63; Sharp v. Schmidt, 62 Texas, 266.

We conclude that the court· pronounced a proper judgment in this case and finding no error in the record the judgment is affirmed.

*Affirmed.*